IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 24-10972 (JTD) |
| PROSOMNUS INC., *et al.*, | (Jointly Administered) |
| | Hearing Date: June 24, 2024 at 10:00 a.m. (ET) |
| Debtors. [1] | Objection Deadline: June 20, 2024 at 4:00 p.m. (ET) (for U.S. Trustee) |
| | RE: D.I. No. 88 |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING DISCLOSURE STATEMENT AND FORM AND MANNER OF NOTICE, (II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES, (III) SCHEDULING CONFIRMATION HEARING, (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF PLAN, (V) GRANTING RELATED RELIEF**

Andrew R. Vara, the United States Trustee for Region 3 ("U. S. Trustee"), through his counsel, files this objection (the "Objection") to *Debtors' Motion For Entry Of An Order (I) Approving Disclosure Statemen And Form and Notice, (II) Establishing Solicitation And Voting Procedures, (III) Scheduling Confirmation Hearing,, (IV) Establishing Notice And Objection Procedures For Confirmation Of Plan, And (V) Granting Related Relief* ("Disclosure Statement Motion") filed at D.I. 88, and in support of his Objection, states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: ProSomnus, Inc. (8216), ProSomnus Holdings, Inc. (3855), and ProSomnus Sleep Technologies, Inc. (0766). The location of the Debtors' principal place of business and the Debtors' mailing address is 5675 Gibraltar Dr., Pleasanton, California 94588.

1

**PRELIMINARY STATEMENT**

1.  The Debtors' proposed Disclosure Statement[2] should not be approved because it fails to provide adequate information as to who will be stripped of their direct claims against non-debtors through the third-party release provisions, who will be the beneficiaries of such releases, or what claims are being released. Among other failures, the Disclosure Statement does nothing to clarify the Plan's baffling series of interlocking terms and definitions related to the third-party releases, including a definition of the *Related* Parties,[3] which in includes at least forty-six (46) categories of persons and entities that are related to the *Released* Parties. Those forty-six categories include such broad and vaguely defined ones as "agents," "consultants," "representatives" and "other professionals."

2.  The Disclosure Statement also fails to adequately disclose as to why the Debtors will be releasing the Released Parties, the nature and value of the claims being released, or what (if anything) the Debtors are receiving in exchange for such releases.

3.  The Disclosure Statement also should not be approved because the impermissible scope of the third-party releases renders the proposed Plan unconfirmable. The Plan extinguishes a broad range of direct claims against non-debtor parties held by other non-debtor parties without their affirmative consent, including claims held by: (i) all parties in voting classes who do not vote, including those who may not have received the solicitation package; and (ii) the forty-six (46) categories of parties related to the Released Parties.

4.  The opt-out mechanism is meaningless to parties who will be stripped of their direct claims against non-debtors without even being sent an opt-out form, such as the myriad of parties

---

[2] All capitalized terms not defined herein have the definitions set forth in the Plan and Disclosure Statement, as applicable.

[3] *See* Plan at Art. 1.1.

who happen to be "related" to the Released Parties. Not only will none of the related parties receive an opt-out form, but the vast majority will not even receive notice that the Plan imposes releases on them. This lack of notice is because most of the related parties are not themselves creditors or interest holders of the Debtors.

5.      The U.S. Trustee also objects to certain aspects of the Debtors' proposed solicitation and related procedures, detailed in subsection IV of the Argument below.

6.      For the reasons set forth below, neither the Disclosure Statement nor the Debtors' proposed solicitation procedures should be approved, and the Disclosure Statement Motion should be denied.[4]

## JURISDICTION, VENUE AND STANDING

7.      Under (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine this Objection.

8.      Pursuant to 28 U.S.C. § 586, the U. S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U. S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898

---

[4] The U.S. Trustee's counsel has provided additional comments to Debtors' counsel to the Disclosure Statement, the form of order approving the Disclosure Statement, the solicitation procedures and related notices, other than those addressed in this Objection. To the extent such comments are not resolved, the U.S. Trustee reserves the right to supplement this Objection, or to assert additional objections at the hearing on the Motion.

3

F.2d 498, 500 (6th Cir. 1990) (describing the U. S. Trustee as a "watchdog").

9.  Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor plans and disclosure statements filed in Chapter 11 cases and to comment on such plans and disclosure statements.

10.  The U.S. Trustee has standing to be heard on the Disclosure Statement and the Disclosure Statement Motion pursuant to 11 U.S.C. § 307.

## BACKGROUND

11.  On May 7, 2024, the above-captioned cases were commenced by the filing of voluntary petitions in this Court.

12.  The U.S. Trustee has not appointed an official committee of unsecured creditors [D.I. 207].

13.  On May 24, 2024, the Debtors filed the Disclosure Statement Motion [D.I. 88], which seeks approval of (i) the Disclosure Statement [D.I. 87] and (ii) certain procedures concerning the solicitation of votes on the Plan of Reorganization [D.I. 88].

*The Solicitation Procedures*

14.  The Disclosure Statement Motion requests approval of ballots for use in soliciting votes from Class 1 and Class 2. *See* Ex. 2-A, 2-B, 2-C to D.I. 88. These proposed ballots allow the applicable creditors to "opt out" of providing a third-party release (discussed below). *See id*.

*Relevant Plan Provisions*

15.  The third-party releases in the Plan (the "Third-Party Releases") provide as follows, in relevant part:

*Section 8.04 Releases by the Releasing Parties.*

Effective as of the Effective Date, to the fullest extent permissible under applicable Law, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other entities who may purport to assert

4

any Claim, Cause of Action, directly or derivatively, by, through, for, or because of a Releasing Party, is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Debtor, Reorganized Debtor, and each other Released Party from any and all Claims (other than Reinstated Claims), interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, known or unknown, foreseen or unforeseen, existing or hereafter arising, in Law, equity, contract, tort, or otherwise, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, the Estates or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert (whether individually or collectively), based on or relating to (including the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable), or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof) or their Estates or the Non-Debtor Subsidiaries, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or Non-Debtor Subsidiaries, the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or Non-Debtor Subsidiaries and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring Transactions, the Plan (including the Plan Supplement), the solicitation of votes on the Plan, the Disclosure Statement, the New Organizational Documents, the pursuit of Confirmation and Consummation, the DIP Facility, the DIP Facility Documents, the New Money Common Equity Investment Documents, the New Note Documents, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan or the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the assumption of the indemnification provisions as set forth in the Plan; (b) any Cause of Action included on the Schedule of Retained Causes of Action; (c) the rights of any Holder of an Allowed Claim to receive distributions under the Plan; or (d) the liability of any Released Party that otherwise would result from any act or omission to the extent that act or omission subsequently is determined in a Final Order to have constituted fraud, gross negligence or willful misconduct.

Plan at § 8.04.

16.     The Releasing Parties are defined under the Plan as follows:

"*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Non-Debtor Subsidiary; (d) the Sponsoring Noteholders; (e) each DIP Lender; (f) the Prepetition Agents; (g) the DIP Agent; (h) each Holder of Senior Notes Claims; (i) each Holder of Subordinated Notes Claims who is party to or has otherwise signed the Restructuring Support Agreement; (j) all Holders of Claims or Interests that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (k) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (l) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (m) each Related Party of each Entity in clause (a) through (l).

Plan at § 1.1.

17. The Plan defines the Released Parties as follows:

"*Released Parties*" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Non-Debtor Subsidiary; (d) the Sponsoring Noteholders; (e) each DIP Lender; (f) the Prepetition Agents; (g) the DIP Agent; (h) each Holder of Senior Notes Claims; (i) each Holder of Subordinated Notes Claims who is party to or has otherwise signed the Restructuring Support Agreement; (j) each current and former Affiliate of each Entity in the foregoing clauses (a) through (i); and (k) each Related Party of each Entity in clauses (a) through (i); *provided* that any Holder of a Claim or Interest that is an Excluded Party or that affirmatively opts out of the releases provided by the Plan by checking the appropriate box on the applicable ballot or Notice of Non-Voting Status indicating that they opt not to grant the releases provided in the Plan shall not be a "Released Party."

*Id*.

18. The Plan defines the term "Related Party" as follows:

"*Related Party*" means, collectively, current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns, subsidiaries, affiliates, managed accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents (including any disbursing agent), advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, heirs, executors, and assigns, and other professionals, in each case solely in their capacities as such, together with their respective past and present directors, officers, stockholders, partners, members, employees, agents, attorneys, representatives, heirs, executors and assigns, in each case solely in their capacities as such.

*Id.*

**ARGUMENT**

I.   **The Disclosure Statement Does Not Contain Adequate Information.**

19.   Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain "adequate information" describing a confirmable plan. 11 U.S.C. § 1125; *see also In re Quigley Co.*, 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007). The Bankruptcy Code defines "adequate information" as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, ***that would enable such a hypothetical reasonable investor of the relevant class to make an informed judgment about the plan*** . . . .

11 U.S.C. § 1125(a)(1) (emphasis added); *see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999).

20.   The disclosure statement requirement of section 1125 of the Bankruptcy Code is "crucial to the effective functioning of the federal bankruptcy system[;] . . . the importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (*citing Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.*), 848 F.2d 414 (3d Cir. 1988)).

21.   The "adequate information" requirement is designed to help creditors in their negotiations with Debtors over the plan. *See Century Glove, Inc. v. First Am. Bank*, 860 F.2d 94 (3d Cir. 1988). Section 1129(a)(2) conditions confirmation upon compliance with applicable Code provisions. The disclosure requirement of section 1125 is one of those provisions. *See* 11 U.S.C. 1129(a)(2); *In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000).

22.   To be approved, a disclosure statement must include sufficient information to

7

apprise creditors of the risks and financial consequences of the proposed plan. *See In re McLean Indus.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan"); *In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y.), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999) (the purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan).

23. Section 1125 of the Bankruptcy Code is geared towards more disclosure rather than less. *See In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990). The "adequate information" requirement merely establishes a floor, and not a ceiling for disclosure to voting creditors. *In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006) (*citing Century Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94, at 100 (3d Cir. 1988).

24. "Adequate information" under section 1125 is "determined by the facts and circumstances of each case." *See Oneida*, 848 F.2d at 417 (*citing* H.R. Rep. No. 595, 97th Cong., 2d Sess. 266 (1977)).

25. A disclosure statement must inform the average creditor what it is going to get and when, and what contingencies there are that might intervene. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). Although the adequacy of the disclosure is determined on a case-by-case basis, the disclosure must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives . . . ." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

26. Here, as detailed above, the Disclosure Statement does not include certain

information that is necessary to creditors deciding how to vote on the Plan:

    a. The Disclosure Statement does not include financial projections, which creditors need to determine whether the Debtors' projected performance supports the transactions contemplated in the Plan.

    b. The Disclosure Statement provides scant information about causes of actions against insiders and other entities. More information on this topic would help creditors determine how much value, if any, the Debtors are leaving behind, and whether any causes of action will be subject to liens held by the Debtors' secured creditors.

27. The Disclosure Statement also fails to provide certain information relating to releases:

    a. The Disclosure Statement does not identify the innumerable Related Parties from whom Third-Party Releases are being extracted without their consent, or, in most cases, knowledge. As noted above, the Related Parties consist of at least 46 categories of parties related to each of the Released Parties, with some categories as broad and ill-defined as "agents," "consultants," "representatives," and "other professionals."

    b. The Plan and Disclosure Statement also are not clear as to whether holders of administrative claims and priority tax claims are included among the Releasing Parties who are being forced to release non-debtors. The definition of Releasing Party includes "the holders of Claims and Interests" that are deemed to accept the Plan but does not specify whether this includes holders of *unclassified* claims.

    c. The Disclosure Statement does not identify all parties who will be the *recipients* of

Third-Party Releases or Debtor releases, because the definition of "Released Parties" also includes the same broad forty-six (46) categories of Related Parties for each Released Party.

28. Because the Disclosure Statement fails to provide adequate information as to numerous, significant issues, it should not be approved by the Court.

## II. The Proposed Solicitation Procedures Do Not Provide Notice to Numerous Persons That Their Claims Against Non-Debtors Will Be Released Under the Plan.

29. The Plan and Disclosure Statement include a recitation of the Third-Party Release, and the Plan includes the relevant definitions. However, the Debtors do not propose to serve any part of the Solicitation Package, or the Confirmation Hearing Notice, or any other document on the numerous Related Parties that would notify them that the Plan will strip them of their right to pursue their direct claims against a large number of non-debtor entities for no consideration. Moreover, it likely would be impossible for the Debtors to arrange to provide such notice, because the identity of many of the Related Parties – such as all "agents of all Related Parties" – cannot be known by the Debtors.

30. In *Folger Adam Security, Inc. v. DeMatteis/MacGregor*, 209 F.3d 252 (3d Cir. 2000), the Third Circuit ruled that "[d]ue process requires 'notice reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 265 (citations omitted).

31. The Debtors' proposed solicitation procedures will not provide notice to the Related Parties that is "reasonably calculated, under all the circumstances, to apprize [them] of the pendency of the action and afford them an opportunity to present their objections" to having Third-Party Releases extracted from them. *Id.* In fact, most, if not all, of the Related Parties will receive no notice at all, because they are not themselves creditors or interest holders of the Debtors. The

10

Motion therefore must be denied unless the Plan is modified so that no Related Parties are deemed to give releases to non-debtors. *See In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343 (LSS), 2022 WL 3030138, at * 128 (Bankr. D. Del. July 29, 2022)(Court was unable to find that the 22 categories of "Related Releasing Parties" received notice, and because Court had concluded that "a request for opt-out consent must be grounded in adequate notice, it is inconsistent to permit releases from persons who do not receive notice by virtue of creditor (or shareholder) status."); *see also Joel Patterson v. Mahwah Bergen Retail Group, Inc.*, No. 3:21CV167 (DJN), 2022 WL 135398 *7 (E.D. Va. Jan. 13, 2022) (in vacating the Bankruptcy Court's order confirming the plan, the District Court noted that "[t]he Bankruptcy Court did not order that any notice or opt-out forms be sent to all of the Releasing Parties, including the current and former employees, consultants, accountants or attorneys of Debtors, their affiliates, lenders, creditors or interest holders.").

**III.    The Disclosure Statement Should Not Be Approved Because the Plan Is Not Confirmable.**

    **A.    *The Proposed Procedure Will Result in Non-Consensual Third-Party Releases***

32.    If a plan is patently unconfirmable on its face, the application to approve the disclosure statement must be denied. *In re Quigley Co.,* 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007) *(citing In re Beyond.com Corp*., 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003) (collecting cases); *In re 266 Washington Assocs*., 141 B.R. 275, 288 (Bankr. E.D.N.Y.) aff'd, 147 B.R. 827 (E.D.N.Y. 1992); *In re Filex, Inc.*, 116 B.R. 37, 41 (Bankr. S.D.N.Y. 1990)).

33.    The Third-Party Releases in the Plan, which benefit numerous non-debtors, will be given by the multiple categories of parties that are related to the Released Parties, without the ability to opt out, and in most instances without having received notice.

34.    Creditors in voting classes who do not vote on the Plan and do not opt out shall also

be stripped of their direct claims against non-debtors, regardless of the reason they did not vote or opt out. Those reasons may include that such creditors (a) never received the solicitation package, or received it late, due to mail errors or delays, or (b) received it timely, and completed it and returned it to the balloting agent, but through no fault of their own, the ballot never reached the balloting agent, or was received late.[5] Other creditors in voting classes may receive the solicitation package, but not understand it, and may not have the time or financial resources to engage counsel, and would never imagine that their rights against *non-debtors* could be extinguished through the bankruptcy of these Debtors.

35. The Third-Party Releases also will be imposed on all Related Parties, without their affirmative consent or ability to opt out of the releases, and in many instances without their receipt of notice.[6]

36. In sum, there will be no affirmative consent to Third-Party Releases given by numerous persons and entities on whom such releases will be imposed. Such releases are therefore non-consensual.

37. Some Courts in this District have determined that third party releases of non-debtors should be allowed only to the extent the releasing parties have given affirmative consent. *See In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011). In *Washington Mutual*

---

[5] This situation is especially likely as to creditors in Class 1 and 2, who are holders of certain secured note claims. Many of these note holders hold their notes through nominees, and therefore the identity of the beneficial owners of the notes are unknown to the Debtors. In all instances, the solicitation packages will not be sent directly to the beneficial holders. Moreover, the Debtors do not have complete control over whether, when or how the brokers will send the solicitation packages to the beneficial noteholders.

[6] Under the Plan, equity interest holders will not provide releases or receive an "opt-out" form. The definition of "Related Party", however, includes "equity holders" and "stockholders". This issue has been raised with the Debtors' counsel. To the extent this issue remains unresolved, the U.S. Trustee reserves any objection concerning the inclusion of these entities in said definition.

the Court held that "any third party release is effective only with respect to those who *affirmatively consent* to it by voting in favor of the Plan and not opting out of the third party releases." *Id.* at 355 (emphasis added). Moreover, the Court clarified that merely having an opt out mechanism is not enough, holding that an "opt out mechanism is not sufficient to support the third party releases . . . particularly with respect to parties who do not return a ballot (*or are not entitled to vote in the first place*). *Failing to return a ballot is not a sufficient manifestation of consent* to a third party release." *Id.* (emphasis added) (citing *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999)).

38. In *Emerge Energy Services LP*, Case No. 19-11563, 2019 Bankr. LEXIS 3717 (Bankr. D. Del. Dec. 5, 2019), the Court ruled that consent to a third-party release "cannot be inferred by the failure of a creditor or equity holder to return a ballot or Opt-Out Form." *Id.* at *52. The Court reached this conclusion even though the Opt-Out Forms provided conspicuous notice of how to opt-out and the consequences of not doing so. The Court also rejected the Debtor's argument that inferring consent from "silence" should be approved as typical, customary, and routine. *Id.* The Court held that it could not, "on the record before it find that the failure of a creditor or equity holder to return a ballot or Opt-Out Form manifested their intent to provide a release. Carelessness, inattentiveness, or mistake are three reasonable alternative explanations." *Id.* at *53.

39. The Debtors may try to distinguish this case from *Emerge* based on the argument that *Emerge* dealt with creditors and shareholders who were receiving no distribution under the plan. However, the Court's decision in *Emerge* was not expressly limited to such a factual situation. To the contrary, the Court's recognition that failure to return a notice can be due to "carelessness, inattentiveness, or mistake," rather than constituting the manifestation of an intent

13

to agree to a third party release, would be applicable regardless of whether a creditor or interest holder was to receive a distribution under a plan. Similarly, the Court in *Emerge* indicated that it "has concluded that a waiver cannot be discerned through a party's silence or inaction unless specific circumstances are present." *Id.* at *54-55. The Court clarified that, "[a] party's receipt of a notice imposing an artificial opt-out requirement, the recipient's possible understanding of the meaning and ramifications of such notice, and the recipient's failure to opt-out simply do not qualify" as such circumstances. *Id.* at *55. Those statements would appear to apply whether a creditor or shareholder is to receive a distribution under a plan or not.[7]

40. Other decisions from Courts in this District are in accord with *Washington Mutual* and *Emerge*. *See In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004) (holding that the "Trustee (and the Court) do not have the power to grant a release of the Noteholders on behalf of third parties," and that such release must be based on consent of the releasing party); *In re Exide Technologies*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (approving releases which were binding only on those creditors and equity holders who accepted the terms of the plan); *Zenith*, 241 B.R. at 111 (noting the release provision had to be modified to permit third parties' release of non-debtors only for those creditors who voted in favor of the plan).

41. Not all decisions from this District have required affirmative consent for third party releases. In *In re Indianapolis Downs, LLC*, 486 B. R. 286 (Bankr. D. Del. 2013), this Court reached a different conclusion than that of *Washington Mutual* and *Emerge*, and the other cases cited above, concerning the need for affirmative consent to third party releases. In so doing,

---

[7] Although not a reported decision, the Court's ruling in *In re Kettner Investments, LLC*, Case No. 20-12366 (KBO), on February 15, 2022 [transcript – D.I. 298] indicates that the *Emerge* ruling was not limited to situations in which the parties deemed to give releases are to receive nothing under the plan. In *Kettner*, the Court denied confirmation of a proposed plan of reorganization because it deemed third-party releases to be given by creditors and interest holders in **unimpaired** classes, as well as by related parties to such creditors, without obtaining their affirmative consent.

14

however, the Court pointed out that, "the third party release provision does not apply to any party that is deemed to reject the Plan." *Id.* at 305. Here, as to the Related Parties and the unclassified creditors, those parties do not even have the opportunity to opt out, thus this Plan does not comply with the decisions of this Court endorsing opt-outs as consensual. [8] In sum, at this juncture, for the reasons detailed above, the U.S. Trustee submits that the Related Parties, to the extent necessary, unclassified creditors, and those that do not vote because they do not receive a solicitation package, should be removed from the Releasing Party definition.

**IV.  Other Aspects of the Disclosure Statement Motion and the Disclosure Statement to Which the U.S. Trustee Objects.**

42.  The following additional relief sought by the Disclosure Statement Motion should not be approved, unless modified as indicated below:

- The proposed Voting Deadline, which is July 19, 2024, should be extended because there might be delays associated with transmitting ballots to the beneficial noteholders in Class 1 and 2, which will depend on the nominees to transmit ballots to them.

- The deadline for filing of the Plan Supplement should be July 15, 2024, to comply with Delaware Local Rule 3016-2. Otherwise, parties will not have adequate time to review, analyze and formulate objections to the provisions of the Plan Supplement.

- The provision in the proposed order approving the Disclosure Statement should be modified so that it does not indirectly approve the Milestones or any other provision set forth in the Restructuring Support Agreement, which agreement has not been approved by the Court and is not the subject of a pending motion.

- There should be a provision in the proposed order approving the Disclosure Statement that requires the voting declaration to indicate which creditors have opted

---

[8] The U.S. Trustee reserves the right to raise at confirmation that the Plan does not comply with the standards for inclusion of nonconsensual releases under applicable law.

15

out of providing releases.

43. The U.S. Trustee intends to continue to work with the Debtors to resolve the above-listed comments in advance of the hearing on this Motion, but to the extent these comments are not resolved in a manner that resolves the U.S. Trustee's concerns, the U.S. Trustee reserves the right to address the issues at the hearing on this Motion.

## CONCLUSION

44. For the reasons set forth above, the Disclosure Statement should not be approved, and the Disclosure Statement Motion should be denied.

## RESERVATION OF RIGHTS

45. The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.  The U.S. Trustee also reserves all rights with respect to plan confirmation issues until the relevant objection deadline.

**WHEREFORE**, the U.S. Trustee requests that this Court enter an order (i) denying approval of the Disclosure Statement and the Disclosure Statement Motion and (ii) granting such other relief that the Court deems just and proper.

Dated: June 18, 2024
      Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 and 9**

By: /s/ *Jonathan W. Lipshie*
     Jonathan W. Lipshie
     Trial Attorney
     United States Department of Justice
     Office of the United States Trustee
     J. Caleb Boggs Federal Building
     844 King Street, Suite 2207, Lockbox35
     Wilmington, Delaware 19801
     Phone: (202) 567-1124
     Fax:   (302) 573-6497
     Email: jon.lipshie@usdoj.gov